UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MELISSA WANNA,<br><br>*Plaintiff*,<br><br>v.<br><br>RELX Group plc; Reed Elsevier Inc. d/b/a LexisNexis; RELX Inc. d/b/a LexisNexis; LexisNexis Risk Solutions Inc.; LexisNexis Risk Solutions FL Inc.,<br><br>*Defendants*. | Case No. 26-cv-2556<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Wanna's Prior Attempts To Hold Lexis Liable For Third Party MyLife's Conduct .......... 2

B. Wanna Now Reasserts Her Dismissed State Law Claims .......... 4

LEGAL STANDARD .......... 6

ARGUMENT .......... 6

I. Wanna's Complaint Should Be Dismissed Because She Has Failed To State A Claim For Relief .......... 6

A. Wanna's Attempts to Hold Lexis Liable for MyLife's Conduct Under an Aiding and Abetting Theory of Liability Fail as a Matter of Law .......... 7

B. Wanna Fails to State any Claim Arising from Lexis's Own Conduct .......... 11

1) Wanna's Defamation Claim Should be Dismissed Because She Fails to Allege any Defamatory Statement Made by Lexis .......... 11

2) Wanna's Statutory Consumer Protection Claims Should be Dismissed Because Wanna Fails to Allege any Statutory Violations and Fails to Identify Future Harm Warranting Injunctive Relief .......... 14

3) Wanna's Civil Conspiracy Claim Should be Dismissed Because Wanna Fails to Allege a Plausible Underlying Tort and Fails to Allege the Existence of Any Agreement Between Lexis and MyLife .......... 19

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
550 U.S. 662 (2009) .......... 6, 16, 20

*Bank of Montreal v. Avalon Capital Grp., Inc.*,
743 F. Supp. 2d 1021 (D. Minn. 2010) .......... 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6, 20

*Bergh v. Zoelle*, No. 24-3054,
2025 U.S. Dist. LEXIS 119194 (D. Minn. June 24, 2025) .......... 13

*Enervations, Inc. v. Minnesota Mining & Mfg. Co.*,
380 F.3d 1066 (8th Cir. 2004) .......... 5

*Finlay v. MyLife.com Inc.*,
0:20-cv-1105 (D. Minn. May 7, 2020) .......... 3

*Grp. Health Plan, Inc. v. Philip Morris, Inc.*,
68 F. Supp. 2d 1064 (D. Minn. 1999) .......... 16

*Issaenko v. Univ. of Minnesota*,
57 F. Supp. 3d 985 (D. Minn. 2014) .......... 12

*Kraft v. Essentia Health*,
604 F. Supp. 3d 813 (D.N.D. 2022) .......... 16

*Lind v. Slowinski*,
450 N.W.2d 353 (Minn. Ct. App. 1990) .......... 10

*Lusk v. Life Time Fitness, Inc.*,
213 F. Supp. 3d 1119 (D. Minn. 2016) .......... 8, 10, 14

*Matthews v. Eichorn Motors, Inc.*,
800 N.W.2d 823 (Minn. Ct. App. 2011) .......... 9, 10

*McDougall v. CRC Indus., Inc.*,
523 F. Supp. 3d 1061 (D. Minn. 2021) .......... 15, 18

*Pope v. ESA Servs., Inc.*,
406 F.3d 1001 (8th Cir. 2005) .................................................................. 11, 12

*Sherr v. HealthEast Care Sys.*,
999 F.3d 589 (8th Cir. 2021) .................................................................. 11, 13

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012) .................................................................. 19

*Torgerson v. City of Rochester*,
643 F.3d 1031 (8th Cir. 2011) .................................................................. 11

*Varela v. State Farm Mut. Auto. Ins. Co.*,
655 F. Supp. 3d 813 (D. Minn. 2023) .................................................................. 14, 17

*Varga v. U.S. Bank Nat. Ass'n*,
952 F. Supp. 2d 850 (D. Minn. 2013) .................................................................. 8, 9, 10, 14

*Wanna v. Relx Grp. PLC*,
No. 23-cv-1769, 2024 U.S. Dist. LEXIS 57429 (D. Minn. Mar. 29, 2024) .......... 3, 7, 20

*Wanna v. RELX Grp., PLC*,
142 F.4th 1102 (8th Cir. 2025) .................................................................. 3

*Weulander v. N. Star Credit Union*,
No. CV 23-885, 2024 U.S. Dist. LEXIS 21167 (D. Minn. Feb. 7, 2024) ....................... 8

*Wiles v. Capitol Indem. Corp.*,
280 F.3d 868 (8th Cir. 2002) .................................................................. 6

*Witzman v. Lehrman, Lehrman & Flom*,
601 N.W.2d 179 (Minn. 1999) .................................................................. 8, 9, 10, 11

*Zayed v. Associated Bank, N.A.*, 913 F.3d 709 (8th Cir. 2019) ...................................... 7, 8

**Statutes**

Minn. Stat. § 325D.44 .................................................................. 15, 17

Minn. Stat. § 325D.45 .................................................................. 15

Minn. Stat. § 325F.68 .................................................................. 16

Minn. Stat. § 325F.69 .................................................................. 15, 16

**Other Authorities**

Restatement (Second) of Torts § 876(b) (1979) ........ 8

## INTRODUCTION

In March 2024, this Court dismissed federal statutory claims Plaintiff Melissa Wanna asserted against Defendants RELX Group, plc, RELX Inc., LexisNexis Risk Solutions FL Inc. ("LNRS FL"), and LexisNexis Risk Solutions Inc. (collectively, "Lexis"), attempting to hold Lexis liable for the alleged conduct of bankrupt third-party MyLife.com ("MyLife"). This Court rightly rejected Wanna's conclusory and implausible allegations that MyLife was Lexis's "agent." The Eighth Circuit affirmed this Court's decision. This Court declined to exercise supplemental jurisdiction over state law claims for defamation and violation of Minnesota's consumer protection statutes based on the same facts.

Now Wanna is back, reasserting the same previously-dismissed state law claims, on behalf of the same putative classes, arising from the same core facts: that MyLife published a "reputation profile" on its website that falsely implied that Wanna has criminal records and a negative reputation. After this Court and the Eight Circuit rejected Wanna's agency theory, Wanna now pivots to an implausible claim that Lexis "aided and abetted" MyLife's alleged unlawful conduct.

This Court should again dismiss. The underlying facts have not changed: Plaintiff's claims are based on *MyLife's* conduct, not Lexis's, and she again fails to plead any plausible basis to impose liability on Lexis. Stripped of its rhetoric, the Complaint at most alleges that Lexis licensed data to MyLife in an arms-length transaction and MyLife then published inaccurate information about Wanna. Those allegations are patently insufficient to state a claim for defamation, statutory consumer fraud, or civil conspiracy under any

legal theory—direct liability, aiding and abetting, or otherwise. Indeed, the Complaint relies on bare conclusions that Lexis "knew" of and "participated in" MyLife's business model, without any factual allegations from which *actual* knowledge or affirmative, substantial assistance can be inferred, as Minnesota law requires. Because Plaintiff's claims rest entirely on MyLife's alleged conduct and because the Complaint fails to plead any viable theory under which Lexis could plausibly be found liable, the Court should once again dismiss the Complaint in its entirety.

## BACKGROUND

### A. Wanna's Prior Attempts To Hold Lexis Liable For Third Party MyLife's Conduct

This lawsuit is Plaintiff Melissa Wanna's second attempt to hold Lexis liable for the alleged misconduct of third-party MyLife, and her counsel's third attempt to pursue MyLife-related claims in litigation. Wanna's first lawsuit against Lexis, filed in this Court in June 2023 (the "2023 Lawsuit"), alleged MyLife operated a website that falsely represented Wanna had criminal records. Wanna also asserted—without any plausible factual support—that MyLife was Lexis's "agent," making Lexis liable for MyLife's publication of the allegedly false information. *Wanna v. Relx Grp. plc, et al.*, No. 23-cv-1769 (D. Minn.). In the 2023 Lawsuit, Wanna sought to represent multiple proposed classes, including a proposed "Defamed Class" comprising "[a]ll individuals whom Defendants report as having 'Criminal or Arrest Records' who in actuality *do not* have any such records." *See* Compl. *Wanna v. Relx Grp. plc, et al.*, No. 23-cv-1769 (D. Minn. June 13, 2023) (Dkt. No. 1). And even before the 2023 Lawsuit, Plaintiff's counsel sued MyLife

directly based on the same grievances at issue here. *See Finlay v. MyLife.com Inc.*, 0:20-cv-1105 (D. Minn. May 7, 2020) (Dkt. No. 95). That case was stayed after MyLife filed for bankruptcy, *In re MyLife*, No. 2:22-bk-14858 (Bankr. C.D. Cal. Sep. 2, 2022), so Plaintiff's counsel changed his pleading strategy to pursue similar claims, arising from the same conduct, against Lexis in the 2023 Lawsuit.

This Court, in a thorough opinion, dismissed with prejudice the federal law claims asserted in the 2023 Lawsuit—under the Fair Credit Reporting Act, Driver's Privacy Protection Act, and Racketeer Influenced and Corrupt Organizations Act—and declined to exercise supplemental jurisdiction over Wanna's state law claims for defamation, civil conspiracy, and violation of Minnesota's consumer protection statutes, dismissing those claims without prejudice. *Wanna v. Relx Grp. PLC*, No. 23-cv-1769, 2024 U.S. Dist. LEXIS 57429, at *1 (D. Minn. Mar. 29, 2024).[1] This Court concluded Wanna had not plausibly alleged that MyLife was Wanna's agent, nor articulated any other basis to impute MyLife's misconduct to Lexis. *Id.* at *4–*6. Wanna appealed, and the Eighth Circuit Court of Appeals affirmed, holding that Wanna had failed to "demonstrate MyLife was Lexis's agent under any theory of agency," and that "[t]he district court did not abuse its discretion when it dismissed her state law claims without prejudice after declining to exercise jurisdiction over them." *Wanna v. RELX Grp., PLC*, 142 F.4th 1102, 1107 (8th Cir. 2025).

[1] Although the Court in its decision dismissing the 2023 Lawsuit expressed reservation about whether federal jurisdiction existed over Wanna's state law claims, *see Wanna*, 2024 U.S. Dist. LEXIS 57429, at *20, the Complaint in this matter makes clear that the elements for federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), are satisfied here. Dkt. No. 1.

### B. Wanna Now Reasserts Her Dismissed State Law Claims

Wanna attempts to pursue the same state law claims this Court previously dismissed. In a bare-bones complaint that strips out much of the detail alleged in the 2023 Lawsuit, Wanna repeats her claim that at some unspecified time in the past, she searched her own name on the internet and discovered a profile about herself on MyLife's website. Wanna alleges the MyLife profile stated she had a poor "reputation score" and implied she had court records and that "graphic information" existed about her. Compl. ¶¶ 1, 3, 12, 21. Wanna contends these statements were false because she has no criminal or court records, and that the warnings and negative score were therefore baseless. Compl. ¶¶ 13, 21. According to Wanna, MyLife's profile harmed her reputation and employment prospects, although Wanna does not allege—and did not allege in the 2023 Lawsuit—that any particular prospective employer (or anyone else, for that matter) ever viewed her profile, or that she was ever denied employment (or suffered any other adverse consequences) as a result of the same. Compl. ¶ 3.

Pivoting away from her rightly-rejected agency theory, Wanna now claims Lexis is liable for MyLife's conduct as an aider-and-abettor. The Complaint alleges Lexis compiles data from various sources into dossiers on individuals and sells that information—including information about Wanna, specifically—to third parties, including MyLife. Compl. ¶¶ 1, 7, 11. Wanna alleges that MyLife used the profiles it created—including hers—to solicit payment from anyone seeking more detailed information and from the subjects of the profiles themselves to correct or remove negative information, Compl. ¶¶ 1, 12, and that Lexis was aware of and assisted MyLife's scheme through the provision of

data, Compl. ¶¶ 11–14. Wanna recognizes that Lexis's provision of data to MyLife is governed by a "data licensing agreement," Compl. ¶ 11, a copy of which is attached as Exhibit A to the Declaration of Scott Pfeffer, filed contemporaneously with this brief.[2]

Wanna seeks to represent a putative class of Minnesota residents "whose personal information was sold by Lexis to MyLife and who viewed or were the subject of a MyLife profile containing defamatory or misleading statements." Compl. ¶ 16. This class is substantially the same as the "Defamed class" Wanna sought to represent in the 2023 Lawsuit because both classes involve individuals who were the subject of allegedly incorrect MyLife profiles.[3] On behalf of this class, Wanna asserts four state-law claims: (1) defamation; (2) violations of the Minnesota Consumer Fraud Act and Deceptive Trade Practices Act; (3) aiding and abetting under the Restatement (Second) of Torts §876 (1979); and (4) civil conspiracy. Wanna seeks compensatory and punitive damages, attorney's fees, and injunctive relief prohibiting Lexis from selling data to MyLife or "similar entities" and requiring Lexis to implement "reasonable data-security and consumer protection measures." Compl. at Prayer for Relief.

---

[2] Because the data licensing agreement between Lexis and MyLife is "embraced by the pleadings" and underlies all Wanna's claims related to Lexis's sale of data to MyLife, the Court may consider it at the pleading stage. *See Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

[3] In fact, the proposed class here is even broader than that in the 2023 Lawsuit because it includes persons who merely "viewed" an allegedly defamatory MyLife profile—not just the subjects of those profiles. Compl. ¶ 16*; see also* Dkt. No. 1 at 5–6.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) mandates dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." To withstand such a motion, the complaint must "contain sufficient factual matter" in order to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 550 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Labels and conclusions," or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id.* In conducting this analysis, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

## ARGUMENT

### I. Wanna's Complaint Should Be Dismissed Because She Has Failed To State A Claim For Relief

Wanna's Complaint asserts four claims—for defamation, violation of Minnesota's consumer fraud statutes, aiding and abetting, and civil conspiracy—each primarily premised on *MyLife's* conduct, not Lexis's. The Complaint fails to articulate a plausible basis for holding Lexis liable for MyLife's conduct, *infra* Part I.A, and further fails to state a claim against Lexis on any other basis, *infra* Part I.B. None of her claims survive scrutiny under Rule 12(b)(6), and the Complaint should be dismissed.

### A. Wanna's Attempts to Hold Lexis Liable for MyLife's Conduct Under an Aiding and Abetting Theory of Liability Fail as a Matter of Law

As in the 2023 Lawsuit, Wanna's claims arise from MyLife's conduct—namely, its publication of allegedly false reputation profiles, *e.g.*, Compl. ¶¶ 21, 27, and its business practice of "soliciting payment from consumers" to remove those statements, Compl. ¶ 27. In the 2023 Lawsuit, Wanna premised her claims on allegations that MyLife acted as Lexis's agent—but this Court rightly rejected that theory and dismissed her claims. *See Wanna*, 2024 U.S. Dist. LEXIS 57429, at *10. So, Wanna tries again, expressly disclaiming any agency relationship between Lexis and MyLife, Compl. ¶ 11, and arguing instead that Lexis is liable for "aiding and abetting" MyLife's conduct, Compl. ¶ 13. Although Wanna raised this theory on appeal, the Eighth Circuit concluded she had forfeited any aiding and abetting arguments by failing to present them to the district court. *Wanna*, 144 F.4th at 1106 n.3. Although "[a]iding and abetting is not an independent tort, but a theory of liability under which a party may be held jointly and severally liable for the underlying tort," *Zayed v. Associated Bank, N.A.*, 913 F.3d 709 (8th Cir. 2019), Wanna purports to plead a standalone claim in Count III of the Complaint. But whether labeled an independent claim or a theory of liability propping up her other claims, it fails.

To plausibly allege that a defendant is liable for aiding and abetting the tort of another, a plaintiff must allege that "the primary tort-feasor [ ] commit[s] a tort that causes an injury to the plaintiff"; (2) "the defendant [ ] know[s] that the primary tort-feasor's conduct constitutes a breach of duty"; and (3) "the defendant [ ] substantially assist[s] or encourage[s] the primary tort-feasor in the achievement of the breach." *Witzman v.*

*Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 185-86 (Minn. 1999) (citing Restatement (Second) of Torts § 876(b) (1979)).

As for the second element, the "scienter (knowledge requirement) for aiding and abetting is 'actual knowledge.'" *Zayed*, 913 F.3d at 715 (citation omitted). A plaintiff shows "actual knowledge" "by alleging 'specific facts' that the defendant knew the 'tortious nature' of the third party's dealings." *Lusk v. Life Time Fitness, Inc.*, 213 F. Supp. 3d 1119, 1136 (D. Minn. 2016). "Constructive knowledge will not suffice, and *it is not enough to plead awareness of the conduct in question*, that it raised red flags, or even that it amounted to gross negligence. Rather, [the plaintiff] must plead facts plausibly suggesting [that the defendant] was aware of the *wrongfulness* of the challenged conduct." *Varga v. U.S. Bank Nat. Ass'n*, 952 F. Supp. 2d 850, 857–58 (D. Minn. 2013) (citations omitted) (emphasis added).

As for the third element, "[t]o satisfy the substantial assistance requirement, a plaintiff must show "an 'affirmative step' on the part of the aider-and-abettor that is a 'substantial factor' in causing the breach of duty." *Lusk*, 213 F. Supp. 3d at 1136. In assessing this element, courts consider "the nature of the act encouraged, the amount of assistance given, the aider-and-abettor's presence or absence at the time of the tort, its relation to the primary actor, and its state of mind." *Id.* "Incidental assistance does not satisfy this element," and the "assistance must further the fraud itself, and not merely constitute general aid to the tortfeasor." *Weulander v. N. Star Credit Union*, No. CV 23-885, 2024 U.S. Dist. LEXIS 21167, at *6 (D. Minn. Feb. 7, 2024) (citation omitted). "[K]nowledge of a violation combined with inaction does not constitute 'substantial

assistance.'" *Varga,* 952 F. Supp. 2d at 861 (citation omitted); *Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 831 (Minn. Ct. App. 2011) (affirming summary dismissal where record demonstrated that defendant knew plaintiff was being sexually harassed but did not "substantially assist[]" such harassment). Nor does the simple provision of "routine professional services" by a defendant to a tortfeasor client satisfy this element. *Witzman*, 601 N.W.2d at 189 (ordering dismissal of Section 876(b) claim because defendant's "performance of routine accounting duties" to a tortfeasor client did not constitute "substantial assistance").

Here, Wanna's aiding and abetting allegations—whether construed as a standalone claim or a legal theory underpinning Wanna's substantive claims—fail as a matter of law for two reasons. Either reason is sufficient to warrant dismissal of Count III in its entirety and Wanna's other claims to the extent they are premised on MyLife's conduct.

First, Wanna's aiding and abetting theory fails because the Complaint does not plausibly allege Lexis had "actual knowledge" of MyLife's misconduct. Rather, the Complaint states only in a conclusory manner that Lexis "knew of MyLife's misconduct, as Lexis was the primary source of the data and MyLife's business model was publicized." Compl. ¶ 33; *see also* Compl. ¶ 1 (alleging that Lexis "knowingly assisted" MyLife); Compl. ¶ 13 (alleging that "Lexis was aware that MyLife used Lexis's data to create" the reputation profiles). But even assuming Lexis knew about MyLife's use of the Lexis data in general, the Complaint does not contain any plausible factual allegations from which it can be inferred that Lexis had "actual knowledge" <u>that MyLife was using that data for a tortious purpose</u>. *Witzman*, 601 N.W.2d at 188. Wanna must show Lexis actually

understood the "*tortious nature*" of MyLife's dealings, *see Lusk*, 213 F. Supp. 3d at 1136 (emphasis added), and absent plausible factual allegations demonstrating that is the case, Wanna's aiding and abetting theory of liability fails, necessitating dismissal both of her purported "aiding and abetting claim" as well as her defamation and consumer fraud claims based on this theory, as discussed further below, *infra* pp. 12–19. *See Varga*, 952 F. Supp. 2d at 857–58.

Second, Wanna's aiding and abetting theory also fails because the Complaint does not plausibly allege Lexis "substantially assist[ed] or encourag[ed]" MyLife's misconduct. *See Witzman*, 601 N.W.2d at 187. The Complaint does not identify any "affirmative steps" Lexis allegedly took to "encourage" MyLife to break the law. *Lind v. Slowinski*, 450 N.W.2d 353, 357 (Minn. Ct. App. 1990). Without plausible allegations of affirmative encouragement, there is no basis to hold Lexis liable for MyLife's alleged conduct. Indeed, mere "knowledge of a violation combined with inaction does not constitute 'substantial assistance.'" *Varga,* 952 F. Supp. 2d at 861 (citation omitted); *see Lind*, 450 N.W.2d at 357 (defendant-passenger not liable for injuries to plaintiff co-passenger despite fact that defendant-passenger supplied driver of vehicle with alcohol and encouraged plaintiff to sit in a manner that increased severity of her injury); *Matthews*, 800 N.W.2d at 831 (affirming summary dismissal of aiding and abetting claim where defendant knew plaintiff was being sexually harassed but did not "substantially assist[]" such harassment). At most, the Complaint alleges that Lexis and MyLife engaged in a routine professional relationship whereby Lexis provided MyLife data pursuant to an arm's length data-licensing agreement between two business entities. Compl. ¶ 11. However, the provision of services such as

those alleged does not constitute substantial assistance towards the commission of a tort by a third-party. *Witzman*, 601 N.W.2d at 189 (dismissing aiding and abetting claim where defendant's "performance of routine accounting duties" to a tortfeasing client did not constitute "substantial assistance"). Wanna's aiding and abetting claim should be dismissed, and her aiding and abetting legal theory should be rejected.

**B. Wanna Fails to State any Claim Arising from Lexis's Own Conduct**

Just as Wanna's Complaint fails to state any claim against Lexis based on an aiding and abetting theory, it likewise fails to state any claim against Lexis based on Lexis's own conduct. Wanna's defamation, statutory consumer fraud, and civil conspiracy claims (Counts I, II, and IV) should therefore be dismissed.

**1) Wanna's Defamation Claim Should be Dismissed Because She Fails to Allege any Defamatory Statement Made by Lexis**

Minnesota law requires that defamation claims be pleaded with "a certain degree of specificity." *Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 598 (8th Cir. 2021) (citations omitted). At minimum, a plaintiff must specifically identify "who made the allegedly [defamatory] statements, to whom they were made, and where." *Id.* (citation omitted). But more specifically, a party must plausibly allege "*the defendant* . . . made a false and defamatory statement about the plaintiff . . . in unprivileged publication to a third party . . . that harmed the plaintiff's reputation in the community." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1011 (8th Cir. 2005), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (emphasis added). Thus, subject to narrow exceptions not relevant here, a defamation claim can only be made against an individual

who actually published the false or defamatory statement. *See Issaenko v. Univ. of Minnesota*, 57 F. Supp. 3d 985, 1030 (D. Minn. 2014) (dismissing defamation claim because complaint "fails to allege any defamatory statements made by [the defendant] within the" limitations period). Indeed, a party generally cannot be liable for "statement[s] [made] by third parties." *See MacDonald v. Brodkorb*, 939 N.W.2d 468, 482 (Minn. Ct. App. 2020) (affirming grant of summary judgment to defendants based on analysis of three particular statements made by the defendant because defendant "is [not liable] for . . . statements by third parties").

As in *Issaaenko*, Wanna's defamation claim should be dismissed because the only allegedly defamatory statements she identifies were made by MyLife—*not Lexis*. For instance, the Complaint alleges that "*MyLife* publishes reputation profiles" on its website, Compl. ¶ 12, that "*MyLife* . . . assigned her a poor reputation score," Compl. ¶ 12, that "*MyLife* published statements on its website" that "were false," Compl. ¶ 21, and even that "Plaintiff alleges that *MyLife's* statements were false and defamatory." Compl. ¶ 13 (emphases added). The Complaint's only allegations about Lexis relate to Lexis's "provis[ion of] MyLife with the personal data underlying the profile." Compl. ¶ 22. In other words, the only conduct attributable to Lexis identified in the Complaint is providing data to MyLife—not publishing any false or misleading statements. Lexis's alleged conduct here does not constitute the making of "a false and defamatory statement," *Pope*, 406 F.3d at 1011, and this claim should be dismissed on this basis alone.

Even if Wanna had alleged a false and defamatory statement attributable to Lexis, her claim would still fail because the Complaint fails to identify any recipients of the

allegedly defamatory statement. *Sherr*, 999 F.3d at 598 (pleading defamation with particularity requires, among other things, specifically alleging "to whom" the defamatory statement was made). While Wanna alleges the "statements were communicated to third parties via the Internet," Compl. 23, that allegation again relates exclusively to *MyLife*'s statements—not Lexis's. Further, while Wanna alleges she "*believes* that the false and misleading MyLife profile harmed her reputation and employment prospects," Compl. ¶ 3 (emphasis added), and that she "lost employment opportunities" because of the MyLife profile, Compl. ¶15, Wanna does not identify any specific prospective employers who viewed her profile or took any adverse action against her. Nowhere does Wanna allege the identity of any prospective employers, any particular roles she had applied and been rejected for, or the circumstances in which an employer (or any third party) would have seen and made an adverse employment decision as a result of her MyLife profile. Wanna's failure to identify any specific individual or organization to whom these allegedly defamatory statements were made "is insufficient to provide [Lexis] with notice as to the scope of the defamation claim," and therefore warrants dismissal. *Bergh v. Zoelle*, No. 24-3054, 2025 U.S. Dist. LEXIS 119194, at *4 (D. Minn. June 24, 2025) (dismissing defamation claim based on allegations that defendant communicated defamatory statement to prospective employers because "the failure to identify any prospective employers [that received the allegedly defamatory statement] is insufficient to provide [the defendant] with notice as to the scope of the defamation claim").

Wanna's suggestion that Lexis is liable for defamation because it "participated in and facilitated" MyLife's publication of defamatory statements by "continuing to supply

data . . . to MyLife despite" knowing about its misconduct, Compl. ¶¶ 13–22, is legally incorrect. As explained above, there is no plausible basis to conclude that Wanna "aided and abetted" alleged defamation by MyLife. The Complaint does not plead any specific facts showing that Lexis had actual knowledge that MyLife was *defaming Wanna*; at most, it alleges that Lexis knew MyLife used Lexis's data and that MyLife's business model was publicized, which is legally insufficient to establish the "actual knowledge" required. *See Varga*, 952 F. Supp. 2d at 857–58; *Lusk*, 213 F. Supp. 3d at 1136. Nor does the Complaint identify any affirmative conduct by Lexis that encouraged or furthered the alleged defamation, beyond the routine, arm's-length provision of data pursuant to a licensing agreement—conduct that does not constitute "substantial assistance" as a matter of law. *See Witzman*, 601 N.W.2d at 189.

**2) Wanna's Statutory Consumer Protection Claims Should be Dismissed Because Wanna Fails to Allege any Statutory Violations and Fails to Identify Future Harm Warranting Injunctive Relief**

The Minnesota Consumer Fraud Act ("MCFA") prohibits "[t]he act, use, or employment by any person of any fraud, . . . false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1. To state a claim, therefore, a plaintiff must "plead that the defendant engaged in conduct prohibited by the statute" with the "inten[t] that its conduct be relied on," as well as a "'causal nexus' between the alleged damages and the defendant's wrongful conduct." *Varela v. State Farm Mut. Auto. Ins. Co.*, 655 F. Supp. 3d 813, 823 (D. Minn. 2023).

Minnesota's Deceptive Trade Practices Act ("MDTPA") includes a private cause of action for injunctive relief for "[a] person likely to be damaged by a deceptive trade practice of another[.]" *McDougall v. CRC Indus., Inc.*, 523 F. Supp. 3d 1061, 1076 (D. Minn. 2021) (quoting Minn. Stat. § 325D.45, subd. 1). The types of "deceptive trade practices" prohibited by the statute are enumerated in Section 325D.44, and relate to conduct that mislead or confuse consumers about, *inter alia*, the source, approval, quality, characteristics, origin, price, or availability of goods or services. Minn. Stat. § 325D.44 subd. 1. "The sole remedy under the MDTPA is injunctive relief," *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 890 (D. Minn. 2021), so "to withstand a motion to dismiss," "a plaintiff asserting a claim under the MDTPA must allege an irreparable injury or threat of future harm to the plaintiff." *Id.*

Both of Wanna's statutory consumer protection claims fail as a matter of law.

With respect to the MCFA, Plaintiff first fails to allege Lexis engaged in any conduct prohibited by the statute. *See* Minn. Stat. § 325F.69, subd. 1. As noted above, nowhere in the Complaint does Wanna identify any false, misleading, or deceptive act or practice *Lexis* made or engaged in that could subject it to statutory liability. Rather, Wanna alleges that Lexis "engaged in deceptive and unlawful trade practices by *selling personal data to MyLife*." Compl. ¶ 27 (emphasis added). But Wanna does not articulate how the routine provision of data, pursuant to a contractual data-licensing agreement, Compl. ¶ 11, involves any "fraud, . . . false pretense, false promise, misrepresentation, misleading statement or deceptive practice," Minn. Stat. § 325F.69, subd. 1, and her conclusory allegation that Lexis's sale of data constitutes a "deceptive ... practice" or "false and

misleading advertising" under the statute fails to sustain her burden at the pleading stage, *Iqbal*, 556 U.S. at 678. And whether *MyLife's* publication of "false and misleading profiles" and solicitation of "payment from consumers," Compl. 27, violates the MCFA is irrelevant, as Wanna fails to plausibly plead that *Lexis* aided and abetted those alleged violations. *See supra* pp. 7–11.

Relatedly, Wanna does not articulate any conduct by Lexis associated with the "sale of any merchandise," as required. *See* Minn. Stat. § 325F.69, subd. 1. Even if Lexis's provision of data to MyLife constitutes the sale of "merchandise" under Minn. Stat. § 325F.68, subd. 2, Wanna fails to allege any false or misleading statements made by Lexis with respect to that sale. To the extent this claim relies on false statements by *MyLife* and *MyLife*'s solicitation of payment for removal of those false statements from its website, that has nothing to do with anything *Lexis* sold, or anything *Lexis* said, and does not state a claim against Lexis. *See Kraft v. Essentia Health*, 604 F. Supp. 3d 813, 824 (D.N.D. 2022) (dismissing MCFA claim for failure to allege any fraudulent conduct by the defendant "in relation to a sale of merchandise"); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999) (dismissing MCFA claim where the complaint "contains no allegation that Defendants were attempting to sell their products while" making the allegedly false statements).

Finally, because there are no allegations that Lexis made any false or misleading statements in providing data to MyLife, the Complaint necessarily also lacks allegations that Lexis made any such statements "with the intent that" Wanna or "others rely thereon." Minn. Stat. § 325F.69, subd. 1. Nothing about the arms-length sale of data identified in the

Complaint, Compl. ¶ 3, permits the inference that Lexis intended Wanna—or any other individual unconnected from that sale—to rely on any statements made during or related to the business transaction. Further, although actual reliance is not required to state a claim, a plaintiff must identify a "causal nexus" between the alleged damages and the defendant's wrongful conduct." *Varela*, 655 F. Supp. 3d at 823. Even if the Complaint arguably alleged a causal relationship between MyLife's reputation profile and Wanna's employment prospects, it does not allege *any* relationship between anything *Lexis* said or did when it sold data to MyLife and Wanna's alleged injury.

Plaintiff's MDTPA claim similarly fails for two reasons. First, Plaintiff does not articulate how Lexis's provision of "personal data to MyLife" constitutes an "unfair or deceptive practice" under the statute, Compl. ¶ 27, and her conclusory characterization of Lexis's conduct are insufficient to state a claim.[4] Specifically, Plaintiff does not identify any provision of Section 325D.44 that prohibits furnishing data to a business partner pursuant to a data-licensing agreement. And that is for good reason, as none of Section 325D.44's provisions speak to that type of conduct—instead, Section 324D.44 prohibits, among other things, practices that "create[] a likelihood of confusion," misrepresent the "geographic origin" of goods, misrepresent the "sponsorship, approval, characteristics, [or] ingredients" of goods, and make false statements "concerning the reasons for . . . price reductions." Minn. Stat. § 325D.44 subd. 1(2), (4), (5), (11). And again, to the extent

[4] Again, whether MyLife's conduct constitutes a "deceptive practice," Compl. 27, has no bearing here, given Wanna's failure to plausibly allege an aiding and abetting theory. *See supra* pp. 7–11.

Plaintiff's claim is premised on MyLife's publication of "false or misleading profiles" and solicitation of "payments from consumers," Compl. ¶ 27, the claim fails because those allegations are attributable exclusively to MyLife—not Lexis—even assuming they were a "deceptive practice" under Section 325D.44.

Second, Plaintiff fails to allege the existence of any irreparable or future-oriented harm warranting injunctive relief—the only remedy available under the statute. *McDougall*, 523 F. Supp. 3d at 1076; *Gisairo*, 516 F. Supp. 3d at 890. The Complaint's only allegations of harm are all retrospective, as Wanna alleges that she "*suffered* damages, including loss of reputation and economic harm," as a result of the alleged violation. Compl. ¶ 30 (emphasis added). Further, while the Prayer for Relief requests an injunction prohibiting Lexis from "selling Minnesota residents' personal data to MyLife or similar entities and requiring defendants to implement reasonable data-security and consumer-protection measures," Compl. at Prayer for Relief, none of the Complaint's allegations support such a request. For one thing, the Complaint contains no factual allegations suggesting that Lexis continues to provide data to MyLife—in fact, as Plaintiff expressly recognizes, MyLife "filed for bankruptcy in 2022." Compl. ¶ 14. There is therefore no risk of future or ongoing harm to Plaintiff related to Lexis's provision of data to MyLife that could warrant injunctive relief. Nor does the Complaint allege the risk of future or ongoing harm related to Lexis's provision of information to entities "similar" to MyLife, Compl. at Prayer for Relief, as the Complaint does not identify any such entities or tether any harm experienced by Plaintiff or any other Minnesota residents to such alleged activity. Finally, the Complaint nowhere alleges—in any fashion—that Lexis's data-security or consumer-

protection practices are presently deficient in a way that threatens Wanna with future injury like those allegedly caused by MyLife, making her request for data-security related injunctive relief untenable. Because Wanna's claimed injury is retrospective and cannot be redressed by the requested injunction, she fails to state a claim for the only remedy the MDTPA provides, and her MDTPA claim should be dismissed.

**3) Wanna's Civil Conspiracy Claim Should be Dismissed Because Wanna Fails to Allege a Plausible Underlying Tort and Fails to Allege the Existence of Any Agreement Between Lexis and MyLife**

To plausibly plead a claim for civil conspiracy, a plaintiff "must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 838 (D. Minn. 2012). In addition, "defendants' actions must be based on an underlying intentional tort." *Id.* (citation omitted). In other words, "[u]nder Minnesota law, 'a civil conspiracy claim is . . . a vehicle for asserting vicarious or joint and several liability, and hence such a 'claim' is dependent upon a valid underlying tort claim.'" *Bank of Montreal v. Avalon Capital Grp., Inc.,* 743 F. Supp. 2d 1021, 1033 (D. Minn. 2010).

Wanna's civil conspiracy claim is based on allegations that Lexis and MyLife "agreed to a common design to monetize personal data by publishing misleading reputation profiles and soliciting payments from consumers," Compl. ¶ 37, and took "concerted actions" towards that goal, Compl. ¶ 38. These allegations fall short of stating a claim for civil conspiracy for multiple reasons.

First, Plaintiff's civil conspiracy fails because the predicate claims it relies on—defamation and consumer fraud, Compl. ¶ 38—also fail, as stated above, so there is no "valid underlying tort claim" as required for a civil conspiracy claim. *See Bank of Montreal*, 743 F. Supp. 2d at 1033. This Court rejected Wanna's civil conspiracy claim for this same reason in the 2023 Lawsuit. *See Wanna*, 2024 U.S. Dist. LEXIS 57429, at *8.

Second, and independently sufficient to warrant dismissal, Plaintiff never alleges any facts about either the supposed "agree[ment]" between Lexis and MyLife, or the "concerted actions" they took in furtherance of such agreement. Instead, she relies exclusively on conclusory allegations and elemental recitals that are patently insufficient at the pleading stage. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. 544. The only "agreement" plausibly alleged in the Complaint is an arms-length, data licensing agreement between Lexis and MyLife, Compl. ¶ 11, which contains numerous safeguards specifically designed to prevent MyLife from using Lexis's data in any improper way. *See* Data Licensing Agreement Appendix 3 § 1(i) (requiring MyLife to ensure its customers only use data for a "lawful" use); *id.* Appendix 3 § 1(ii) (prohibiting use of data in a manner that violates FCRA).

## CONCLUSION

For the foregoing reasons, Lexis respectfully requests the Court: (1) grant this Motion to Dismiss; (2) dismiss Plaintiff's Complaint; and (3) and grant Lexis any other relief the Court deems appropriate.

Dated: June 10, 2026

By: <u>/s/ Joseph G. Schmitt</u>

Joseph G. Schmitt (Reg. No. 0231447)
NILAN JOHNSON LEWIS
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Telephone: 612-305-7577
FAX: 612-305-7501
jschmitt@nilanjohnson.com

Ronald I. Raether, Jr. (Reg. No. 0272577)
TROUTMAN PEPPER LOCKE LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949-622-2700
FAX: 949-622-2739
ron.raether@troutman.com

Joshua D. Davey (admitted *pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
(704) 916-1503
joshua.davey@troutman.com

*Attorneys for RELX Group, plc, RELX Inc, d/b/a LexisNexis; LexisNexis Risk Solutions Inc., and LexisNexis Risk Solutions FL Inc.*