**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MELISSA WANNA, on behalf of herself individually and on behalf of a limited class of similarly situated Minnesota residents,<br><br>Plaintiff,<br><br>v.<br><br>RELX Group plc; Reed Elsevier Inc. d/b/a LexisNexis; RELX Inc. d/b/a LexisNexis; LexisNexis Risk Solutions Inc.; and LexisNexis Risk Solutions FL Inc.,<br><br>Defendants. | Case No. 0:26-cv-02556 (JMB/ECW)<br>The Honorable Jeffrey M. Bryan<br>Magistrate Judge Elizabeth Cowan Wright<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND** |

## INTRODUCTION

Defendants' Notice of Removal rested its numerosity allegation on a paragraph of Plaintiff's 2023 complaint and a MyLife website FAQ. ECF No. 1 ¶¶ 25–27. Their opposition adds the only evidence they offer: a declaration that the data LexisNexis Risk Solutions FL Inc. ("LNRS FL") licensed to MyLife after June 13, 2017, "included data concerning at least 500 Minnesota residents." ECF No. 25-3 ¶ 3. That is a count of data subjects. The class is not data subjects. It is Minnesota residents whose data Lexis sold to MyLife *and* who viewed or were the subject of a MyLife profile containing defamatory or misleading statements. Compl. ¶ 16 (ECF No. 1-1 at 7). On every element that makes a person a class member, Defendants offer nothing.

The amount in controversy rests on less. Defendants submit no evidence of how many class members there are, what any member's claim is worth, or what the requested injunction would cost. They offer two defamation verdicts from unrelated cases and the assertion that the injunction "could cost millions of dollars to implement across Lexis's businesses" without a declaration saying so. ECF No. 25 at 14–16. The Eighth Circcuit has affirmed remand on stronger showings.

Defendants bear the burden on both jurisdictional thresholds, and they have carried it on neither. The one element of the local-controversy exception they contest turns on whether this case's own first iteration is an "other class action." It is not.

## ARGUMENT

### I. Defendants Have Not Proven a Class of 100 or More.

#### A. The burden is Defendants', and it is a burden of proof.

Defendants concede that they must show "it is more likely than not" that the class has 1000 or more members. ECF No. 25 at 19. When a removal is challenged, "the removing party bears the burden of showing by a preponderance of the evidence that the case meets each one of the requirements." *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023). One of those requirements is a class of at least 100 members. *Id.*; *Westerfeld v. Indep. Processing, LLC*, 621 F.3d

819, 822–23 (8th Cir. 2010). And "the party bearing the burden of proof is not entitled to the benefit of the doubt." *Westerfeld*, 621 F.3d at 823.

Defendants nonetheless fault Plaintiff for failing "to prove, to a 'legal certainty,'" that the class has fewer than 100 members. ECF No. 25 at 19; *see id.* at 13. That inverts the sequence. The legal-certainty standard applies only "[o]nce the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied," *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009); *see id.* at 959, and Defendants never get there.

**B. The Second Pfeffer Declaration counts the wrong thing.**

CAFA counts "class members," which the statute defines as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). The definition here has three conjunctive elements: (1) a natural person residing in Minnesota whose personal information Lexis sold to MyLife; (2) a MyLife profile containing defamatory or misleading statements; and (3) the person viewed, or was the subject of, that profile. Compl. ¶ 16.

The Second Pfeffer Declaration addresses only the first element. ECF No. 25-3 ¶ 3. It does not say that MyLife published a profile about any of the 500 people. It does not say that any profile contained a defamatory or misleading statement. It does not say that anyone viewed one. It does not identify the

records consulted, how they were searched, what period after June 13, 2017 they cover, or how a sales director "familiar with the types of records LNRS FL maintains" derived the figure. *Id.* ¶ 2. No record is attached. The decision on which Defendants principally rely discounted declarations that described the contents of a spreadsheet without producing it. *Baker v. Meiling*, No. 3:20-cv-00518-MMD-CLB, ECF No. 106 at 11 (D. Nev. Oct. 29, 2020).

**C. Defendants' inference is stacked conjecture.**

To get from 500 data subjects to 100 class members, Defendants reason that "most—if not all—of those 500 individuals would have been subjected to the conduct she challenges" because MyLife's business depended on publishing profiles. ECF No. 25 at 22. That is three inferences stacked on a declaration that supports none of them: that MyLife published a profile on each data subject, that each profile was defamatory or misleading, and that each person viewed it or was its subject. A removing defendant may rely on "specific factual allegations . . . combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) (per curiam) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010)). But the amount in controversy is not established by a preponderance "if a court must resort 'to conjecture, speculation, or star gazing'", *id.* (quoting *Pretka*, 608 F.3d at 754), and numerosity is no different.

Defendants' own brief shows why the inference fails. In the same opposition, they fault Plaintiff because she "fails to allege that any third party ever actually viewed her profile" at all. ECF No. 25 at 9. Defendants cannot doubt that the named plaintiff's profile ever reached a reader and, thirteen pages later, ask the Court to presume that most of 500 data subjects were defamed. And if the 2023 pleading is the measure, as Defendants insist, it alleged that MyLife "itself is the true publisher of most of the negative information," having "falsely . . . interpreted third party records," "added additional fabricated information," and "heavily editorialized otherwise accurate information." ECF No. 1-2 ¶ 32 (at 9–10). A person whose data Lexis licensed to MyLife is not, by that fact alone, a person MyLife defamed.

**D. Judicial estoppel does not supply the missing evidence.**

Defendants' fallback is that Plaintiff is estopped by paragraph 166 of her 2023 complaint. ECF No. 25 at 19–21. The factors that "typically inform" judicial estoppel are absent. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

*First*, the positions are not "clearly inconsistent" in the sense *New Hampshire* requires. *Id.* at 750. Paragraph 166 stated that the class sizes were "unknown" to Plaintiff, estimated them "purportedly and on information and belief," and alleged that "in Minnesota alone, Lexis has systematically reported hundreds of thousands of people with minor non-criminal driving infractions as incorrectly

having a 'criminal record.'" ECF No. 1-2 ¶ 166 (at 37). That is an allegation about Lexis's own reporting, offered for a nationwide class defined as "[a]ll individuals whom Defendants report as having 'Criminal or Arrest Records' who in actuality do not have any such records." *Id.* ¶ 159 (at 36). It is not a count of Minnesota residents whose data went to MyLife and who viewed or were the subject of a defamatory MyLife profile.

*Second*, Plaintiff did not succeed. Chief Judge Schiltz held that she had "failed to meet her burden to show that the Court has original jurisdiction over any of her state-law claims." *Wanna v. Relx Grp. PLC*, No. 23-cv-1769, ECF No. 50 at 20–21 (D. Minn. Mar. 29, 2024), *aff'd*, 142 F.4th 1102 (8th Cir. 2025). "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." *New Hampshire*, 532 U.S. at 750–51 (citation omitted).

*Third*, Plaintiff gains no unfair advantage by pleading a Minnesota class in a Minnesota court on the Minnesota claims the federal court declined to hear.

Nor can Defendants ask the Court to presume the larger number. Defendants hold the licensing records. Asked to put a number on the Minnesotans whose data went to MyLife, their declarant did not swear to hundreds of thousands, or to thousands. He swore to "at least 500" Minnesota residents. ECF No. 25-3 ¶ 3. Defendants cannot hold Plaintiff to an unsworn 2023 estimate that their own sworn evidence does not support.

*Baker* does not change the analysis. It is an unpublished district-court order, and it did not rest on judicial estoppel. The court described its task as "evaluat[ing] the evidence proffered by both parties" to decide whether the class likely exceeded 100. *Baker*, ECF No. 106 at 10. The evidence there included sworn declarations, submitted in earlier related cases by the same plaintiffs' counsel and by a class representative in those cases, estimating a nearly identical class at over 500, under 100, 143, and 195; a receivership service list of at least 990 investors from whom the class was drawn; and a transferring judge's determination that counsel was engaged in "blatant forum shopping" to escape earlier adverse rulings. *Id.* at 5–6, 10–11. Here there is no sworn prior count, no list, and no such finding—only an information-and-belief allegation about a different class, and the "at least 500" figure in Defendants' own declaration.

**E. An untested, conclusory declaration cannot carry a preponderance burden.**

Defendants' first and only evidence of class size arrived with their opposition. ECF No. 25-3. It states a conclusion—"at least 500"—without the records behind it, the search that produced it, or any connection to the class definition, and it has never been tested. *Id.* ¶¶ 2–3. When a removing party's jurisdictional allegation is contested, "both sides submit proof and the court decides, by a preponderance of the evidence," whether the requirement is met. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014) (amount in

controversy). A bare conclusion gives the Court nothing to weigh. If the record leaves the Court unable to find a class of 100 more likely than not, that is Defendants' failure of proof, and the doubt does not run in their favor. *Westerfeld*, 621 F.3d at 823.

**II. Defendants Have Not Proven $5 Million in Controversy.**

Plaintiff contested the amount in controversy. ECF No. 15 at 11–14. Once it is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. The question is whether "a fact finder might legally conclude" that the amount exceeds $5 million. *Bell*, 557 F.3d at 959 (emphasis omitted) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). Plaintiff accepts that standard. It calls for "a straight-up weighing of the evidence to determine which side has the better of the argument." *Leflar*, 57 F.4th at 604. And the removing party must meet it with evidence and reasonable inferences drawn from evidence, not "conjecture, speculation, or star gazing." *Waters*, 873 F.3d at 636 (quoting *Pretka*, 608 F.3d at 754).

*Pirozzi* does not relieve Defendants of that burden. The plaintiffs there did not challenge the removal allegations, and the court applied the rule that, "[w]hen plaintiffs have not challenged the removing defendant's amount-in-controversy allegations," the removing party's burden "is a pleading

requirement, not a demand for proof." *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984–85 (8th Cir. 2019) (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). Plaintiff challenged them.

**A. *Standard Fire* removes the cap; it does not supply the evidence.**

Plaintiff accepts *Standard Fire*'s holding that "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013).[1] The Complaint's aggregate limit therefore does not, by itself, defeat jurisdiction. *See Standard Fire*, 568 U.S. at 595–96. But *Standard Fire* does not instruct a court to presume $5 million in controversy once a limit is set aside. It directs the court to determine jurisdiction "by adding up the value of the claim of each person who falls within the definition of [the] proposed class" and asking whether the sum exceeds $5 million. *Id.* at 592. In *Standard Fire*, that exercise was performed on "evidence presented by the company," which showed that the class's claims "would, in the absence of the stipulation, have fallen just above the $5 million threshold." *Id.* at 591. Setting the limit aside here leaves nothing—no evidence of

1 Plaintiff's opening memorandum attributed to *Standard Fire* the statements that a case "must be remanded to state court" unless the defendant "plausibly alleg[es]" the amount in controversy. ECF No. 15 at 12. That language does not appear in *Standard Fire*; the plausible-allegation standard is stated in *Dart Cherokee*, 574 U.S. at 89. Plaintiff withdraws the attribution and relies on the authorities cited here.

how many class members there are and no evidence of what any member's claim is worth.

**B. Defendants' arithmetic has no evidentiary inputs.**

*Compensatory damages.* Defendants multiply an individual defamation award of $50,000 or $135,000 by a class of 100. ECF No. 25 at 14–15. Both inputs are assumed. The class size is the numerosity question Defendants have not proven, and the per-person figure comes from verdicts in unrelated cases, not from anything in this record. In *Hartis v. Chicago Title Insurance Co.*, by contrast, the plaintiffs' own petition alleged more than 71,000 Missouri transactions and a representative $12 overcharge, supplying both the number of claims and the value of each. 694 F.3d 935, 945–46 (8th Cir. 2012). Here the Complaint supplies neither; it pleads fewer than 100 members. Compl. ¶ 16.

*Punitive damages.* A punitive-damages multiplier needs a base. In *Pirozzi*, the removal notice quantified $2.885 million in compensatory damages and $720,000 in fees before any punitive award was added. 938 F.3d at 982–83. Defendants quantify nothing, and a single verdict summary from an unrelated 2008 case is not a base. ECF No. 25 at 15.

*Injunctive relief.* Defendants say the injunction could cost millions, but no declarant says so. ECF No. 25 at 16. In *Waters*, the defendant submitted an executive's affidavit that injunction-driven equipment changes "would exceed

$6,000,000"; the Eighth Circuit affirmed remand, holding the affidavits "insufficient to quantify, beyond mere speculation, the costs it would incur in complying with an award of injunctive relief in this case." 873 F.3d at 635–36. In *Lizama v. Victoria's Secret Stores, LLC*, the court again affirmed remand because the defendant "presented no data or other evidence" to support its valuation of the requested injunction. 36 F.4th 762, 766–67 (8th Cir. 2022). Defendants' showing is weaker than either. The contrast with *Leflar* is instructive: there the court vacated a remand order in part because the district court overlooked a compliance consultant's declaration that estimated more than $7.5 million in compliance costs and itemized them by category. 57 F.4th at 604–05. Defendants offer no declaration at all.

*Attorney's fees.* Defendants' 25% figure is a percentage of the same unproven base. ECF No. 25 at 16–17.

Because Defendants have not established the amount in controversy by a preponderance of the evidence, the question whether recovery above $5 million is legally impossible never arises. *Bell*, 557 F.3d at 959.

**III. The 2023 Action Is Not an "Other Class Action."**

Defendants contest one element of the local-controversy exception: the three-year clause. ECF No. 25 at 23–24. They do not dispute that more than two-thirds of the class are Minnesota citizens, that the principal injuries occurred in

Minnesota, or that LNRS FL is a defendant from whom significant relief is sought and whose conduct forms a significant basis for the claims. They call it "undisputed" that "LNRS FL is a citizen of Minnesota for jurisdictional purposes" and that complete diversity is lacking. *Id.* at 18.

The question under § 1332(d)(4)(A)(ii) is not whether the clause can reach a prior action brought on behalf of the same persons. It can. The question is whether the 2023 Action is an "other" class action at all. It is not; it is this case's first iteration.

Courts distinguish between a separate, competing lawsuit and the same case in a second iteration. In *Vodenichar v. Halcón Energy Properties, Inc.*, the plaintiffs dismissed a federal class action without prejudice "with the intent of pursuing their claims against all defendants in state court" and refiled there through the same counsel. 733 F.3d 497, 502 (3d Cir. 2013). The refiled complaint added two named plaintiffs, two defendants, and the claims against the added defendants. *Id.* The Third Circuit nonetheless held that the first action was "not an 'other class action' as contemplated under CAFA, but rather is the same case," because "this is not a copycat situation where the defendants face similar class claims brought by different named plaintiffs and different counsel in different forums." *Id.* at 509–10. The refiled action was "the same case, albeit enlarged." *Id.* at 510. The Ninth Circuit reached the same result where an earlier action "never proceeded independently and essentially became part of this case." *Kendrick v.*

*Conduent State & Local Sols., Inc.*, 910 F.3d 1255, 1260 (9th Cir. 2018). The clause exists, that court explained, "to ensure that controversies giving rise to multiple class actions be heard in federal court in one proceeding." *Id.* at 1261. The Senate Report describes its purpose the same way: to ensure "that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation." *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 932 (9th Cir. 2015) (emphasis omitted) (quoting S. Rep. No. 109-14, at 41 (2005)). Even the Sixth Circuit, which applies the clause by its plain text, recognizes the line between "an independent action" and "a continuation of the first-filed case." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 911 (6th Cir. 2017). [

This case falls on the continuation side of that line. It is the same plaintiff, represented by the same counsel, suing the same five defendants over the same data-licensing relationship with MyLife. It reasserts the defamation, consumer-protection, and civil-conspiracy claims from 2023 and adds an aiding-and-abetting count, as Defendants themselves note. Compl. Count III (ECF No. 1-1 at 10); ECF No. 25 at 9. As in *Vodenichar*, an added count does not make a second case; what matters is whether Defendants face separate, parallel class actions. They do not. Chief Judge Schiltz dismissed the state-law claims without

prejudice when he declined supplemental jurisdiction. *Wanna*, No. 23-cv-1769, ECF No. 50 at 21. The Eighth Circuit affirmed that disposition on July 10, 2025. *Wanna*, 142 F.4th 1102. This action pursues those claims in the forum the dismissal left open. At no point have two class actions been pending. A dismissed action benefits from no coordination, and there is no second forum from which to consolidate. On Defendants' reading, a federal court's decision to decline supplemental jurisdiction over state-law class claims would itself disqualify the state court from hearing them as a local controversy for three years. The clause does not compel that result.

**IV. The Home-State Exception.**

Defendants argue that Plaintiff has not shown that every "primary defendant" is a Minnesota citizen. ECF No. 25 at 25–27. The factors Defendants invoke ask, among other things, which defendant has the greater liability exposure and which is sued directly rather than vicariously. *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1108 (D. Minn. 2009). Defendants' own declarations identify LNRS FL as the party to the agreement that "governs the relationship" with MyLife and as the entity that licensed MyLife the data at the center of this case; they identify no other Lexis entity in that role. ECF No. 20 ¶ 3; ECF No. 25-3 ¶ 3. Should the Court not reach this exception, the local-

controversy exception and Defendants' failure of proof on both jurisdictional thresholds each independently require remand.

**V. The Forum-Defendant Rule.**

Plaintiff does not rely on 28 U.S.C. § 1441(b)(2) as a ground for remand; by its terms it reaches actions removable "solely" under § 1332(a), and Defendants removed under § 1332(d).

**VI. Fees Under § 1447(c).**

Absent unusual circumstances, fees are available "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Defendants removed a case pleading fewer than 100 Minnesota class members on the strength of a paragraph from a pleading this Court had held insufficient to establish CAFA jurisdiction, and a website FAQ. ECF No. 1 ¶¶ 25–27. They produced their first evidence of class size only after Plaintiff moved to remand, and it counts data subjects rather than class members. They have never offered evidence of the value of the injunction on which their amount-in-controversy theory depends. That is not an objectively reasonable basis for removal.

## CONCLUSION

The Court should remand this action to the District Court of Minnesota, Hennepin County, Fourth Judicial District (Court File No. 27-CV-26-5733), and

award Plaintiff her just costs and actual expenses, including attorney's fees, incurred as a result of the removal under 28 U.S.C. § 1447(c).

Dated: September 24, 2026

Respectfully submitted,

**MADGETT LAW, LLC**

By: /s/ David J.S. Madgett
David J.S. Madgett (MN #390494)
IDS Center, Suite 1650
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-470-6529
Email: dmadgett@madgettlaw.com
*Attorney for Plaintiff Melissa Wanna*